Thank you, Your Honors. Morgan Russell on behalf of Petitioner, Bereket, Ghebrehiwet. I know the Court is aware that the government has filed a motion to remand this case. The Petitioner does not oppose, continues to not oppose. Well, the reason we understand you'd rather have it remanded than lose. But is it really necessary to remand, in your view, in order to amount to a remand? Well, it's necessary to remand at least for a little bit more. Obviously, this Court can't grant asylum, which is what Petitioner wants. And it would have to go back to the Court. Right. But the question is for further fact-finding. Right. I think this Court — so the reason we don't oppose the remand proposed by the government is because I don't think there's any way on this record and under this Court's law that the agency on remand can do anything but hold that he's met his burden to establish asylum because his past persecution and his current fear, even regardless of his past torture, was and will be on account of his real and imputed political opinion. I think if the Court wants to issue a decision holding that the record compels that determination, it certainly can. And I'm happy to — So you don't have — you wouldn't have a problem if we did that. No. I wouldn't have a problem with that. And I'm happy to walk through what I think are the best — Okay. — sites in the record supporting that determination. Even if the Court does that, a remand is still necessary just for the IJ to confirm that there's no discretionary basis for denial and to actually grant asylum. But I would — you know, the government, I think to its credit, noted that this case, that Rodriguez-Roman, this Court's decision, is something that needs to be considered. That case was cited to the BIA by prior counsel's brief to the board on appeal. It holds nearly categorically that severe punishment for the crime of defection from an authoritarian regime constitutes persecution on account of imputed political opinion. I think here there — unlike in that case, there's not a specific statute like there was in Cuba. Rather, as the IJ found, the laws of Eritrea actually permit freedom of travel and freedom of movement, but it's an unencoded policy that denies those things and denies exit from the country. I think, if anything, that just shows that this type of punishment is not for any sort of legitimate prosecution for a nonpolitical crime, but is purely a form of political oppression and political persecution to keep people from defecting from this very closed regime. So, counsel, from your perspective, if we were to remand, what would be the contours of the remand? Because the IJ already found that his past torture satisfied the threshold of harm necessary for persecution, if this Court were to hold that the record compels a determination that the nexus element was also established, it would just be a remand for the IJ to determine whether there's any discretionary basis to deny asylum. I don't know that the record compels that. Okay. I'm happy to walk through what I think are the most compelling parts of the record. Well, I mean, to me, it does not suffice to just show that there are two ways the evidence can be interpreted. It has to be susceptible to only one interpretation, and that's in favor of your client. And you think this record meets that? Right. Well, I think this record does meet that sort of under the general rubric of imputed political opinion. But I think especially under this Court's decision in Rodriguez-Roman, which said that because the crime of defection is intended to punish those who exhibit a grave form of disloyalty to their homeland, we simply acknowledge here what should by now have been apparent to all, that a State which severely punishes unlawful departure views persons who leave illegally as disloyal and subversive and seeks to punish them accordingly. Is that case in your brief? That is in the brief at page 23. It's also the case cited in the government's remand motion. In the remand motion. Which was an old case. It's 96. It is prior to the Real ID Act's one central reason standard. It is after Elias Zacharias, though, and specifically discusses Elias Zacharias and says that Elias Zacharias doesn't change this formulation, this holding. More recently was this notion is reiterated in Al Harbi from 2001. That's also cited at page 23 of the brief. There is a footnote on page 894 of that case explaining that Rodriguez-Roman shouldn't be limited to cases where there's an actual statute prohibiting departure or defection from the regime. But I do want to, with the time I have since it came up, just walk through what I think are the most compelling sites and findings in the record. Should the Court want to go further than just disposing of the case on the remand motion and hold that the record compels a finding of nexus? I thought his the genesis of his claim was because he requested relief from the National Service. No. He was tortured because they thought that he had helped other people escape and thought that he was also planning to escape. But he also testified that he was warned that further requests to be released from the National Service would result in detention or harm. Right. That's sort of earlier, and I think that kind of plays into the sort of general nefarious situation he was in. The immediate reason he was tortured, that he was told, was because they suspected him of helping people trying to defect and of being, of sort of being imputed as a defector. But it also was tied into the age of National Service because it was limited to people who, men from 14 to 55, and it was not a general prohibition against all citizens. It was those who were of the age to serve in the National Service. Yeah. That may be right. I'm not sure on exactly that point whether that was the place. Well, what difference would that make? I don't think it makes a difference. Well, it makes a difference in that it's targeted. It's more clearly tied to his request to leave National Service. In the Cuban case, it's globally, that law is globally applied to all of the citizens.  It's not a law. And I think that the restriction and the punishment for leaving, you know, I'm not sure that the record is clear that it actually only applies to that age group of men. But I think in light of some of the other evidence that I can speak to you — But does the record compel a different conclusion? Well, I think in light of what I would cite next, I think that it does compel a conclusion that the reason that he was tortured for defection, the reason that he would be tortured now again and persecuted now would be because they — the government views people who leave contrary to this policy, as is, in fact, the case with Mr. — with Mr. Gilbert Huet, as people who are opposed to the regime, as he actually is, in fact. So the IJ found that — found at page 54 of the record, this point that I made, that it's not actually a law, but it's just that these rights are being denied in practice. We cite several times in the brief his credited testimony that the Eritrean government views leaving the country as a big opposition to the government. He repeats essentially the same testimony in that same point, which, if credited, should establish his claim, his nexus by itself at page 174 to 175, and again at 176 of the record. I think notably in his declaration, which the IJ also specifically credited and relied on in other findings in the IJ's decision, although not this one, his declaration averts that the government agents, when they detained his mother after his escape from the country, they told her that he is a traitor to the government and that he and his friends intended to go against the government and betray her people. I think the context of why the regime has this policy that's given by the State Department reports helps sort of confirm and corroborate his credited testimony on this front. The fact that he's been granted cat protection is essentially a determination that, in fact, he is facing the really likely — That he's facing the punishment. The question is why. But it doesn't tell us the reason that they denied him. Right. So the State Department report, I think, corroborates and confirms his view that this policy is really about not letting people defect from the regime. The 2010 State Department report in AR-210 says that Eritrean citizens do not have the right to criticize their government in public or private and that the government actively monitors the Eritrean diaspora. At 215, that same report, although no political parties operated in the country other than the official party, citizens living abroad established several political parties and even a shadow government in Ethiopia. During the year, the government continued to label individuals who participated in political parties other than the ruling parties as traitors, rapists, pedophiles, and traffickers. And so I think that those official State Department reports sort of confirm that the government is extremely aware that there is no — they've clamped down so toughly on their own country, in Petitioner's words, they've made the whole country a prison, that any opposition will come from outside. So they want to control the flow of people outside because they view those people as either real or potential opponents to undercriminalization. So assuming that you accept the cap protection that was granted to the Petitioner, essentially that means the only question left is one of nexus, that is, is it the imputed political opinion which, in fact, contributed to that? And it's a fairly simple, straightforward question here based upon the record. And if the Court determines that, in fact, you really have established there's an imputed political opinion, then why not ultimately go to the issue of asylum and withholding? Well, I think — I think you — I think that the Court could say that there is imputed political opinion being established. Nexus is satisfied as a matter of law. The record compels it. So a remand would only be required for the IJ to — to make the discretionary determination. All right. Counsel, you've exceeded your time. Let's hear from the government, and then we'll give you a minute. So, first, I just wanted to spend a couple of minutes explaining how we got to this situation. This case arrived on my desk just over three weeks ago. And as soon as I saw it, I realized that we had an issue. But just so that you understand, we have to go up the chain of command to get authority for a remand motion. We have to go to the client to get authority. At each point, everyone's arguing about scope. And it just takes time. And that's why we didn't file the motion until last week. But I apologize. It got my attention. The case got my attention because in the 10 years I've been at oil, I haven't seen a case where there was a cat finding. From Eritrea, a cat finding, I thought, this is definitely a different case. To me, the reason to remand is to give the board a chance to address clearly, and in light of the Cuban case, which I think is directly on point, the imputed political opinion. Because I think it's important for the board, in the first instance, to develop that law. And particularly with respect to the future fear point. Because I think that what everyone missed in this case is the fact that there was a positive cat finding in the past gives him an argument that he has future fear based on that alone, that there's an imputed political opinion as to the future because the government tortured him in the past. And I think as a matter of jurisprudence, it's better to let the board flesh that analysis out. So you and opposing counsel don't necessarily agree as to the scope of the remand? Well, we did have a bit of discussion about it, and my client always likes to leave it as vague as possible. I insisted on citing the Cuba case. So that, and I also, in the motion that we filed, referenced specifically well-founded fear as to the future. But opposing counsel's position is we should, at this point, determine that the record compels a finding of nexus and just remand for the board to exercise its discretion. Would you object to that? I would counsel against it. I think that the board should get another chance. And I think the board should get another chance and be pointed specifically to the Cuba case to make a determination. I thought that case was cited to the board originally. It was. And then they didn't deal with it. They goofed. Normally, when the board goofs, and there's, we have a record where it shows that he's likely to be tortured because he's been tortured, and they grant a cat, and you have facts like this, it seems fairly self-evident. I will concede the first, to concede that the board goofed. We goofed. We filed a brief without citing that Cuba case. So we appreciate the government's acknowledgment of that mistake. It's candid. I still think under Chenery and principles of good jurisprudence, it would be better to let the agency flesh it out in the first instance. So, and I rest. I have some, I still have some questions about the nexus issue, because it wasn't fairly joined in the proceedings below. So, oh, okay. Anything else? That's it. All right. Thank you. Thank you so much. One minute. You have anything to add, counsel? As I said before, we, you know, if the court wants to dispose of it, you know, just by granting the remand order, we continue to not oppose that. As I said, I think for the reasons I already walked through, I think the court can resolve the issue. That would mean a little more work for the court right now, a little less work for me at the board on a remand. It's up to the court how to determine. I think both are equally viable routes. All right. Could you represent the Petitioner if it is on the remand? On remand at the board, yes, yes. All right. Thank you. Thank you to both counsel for your helpful arguments. And again, we commend the government for its candor before the court. The case just argued is submitted for decision by the court. The next case on calendar, Ellis v. Natera, has been stayed pending decision of S.C. Cyan v. Beaver County. The final case on calendar for argument is Montana Environmental Information Center v. Thomas.
judges: Schroeder, Rawlinson, Sessions